IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| ERIC CARTER, MARK SIRACUSE, MICHAEL LINDERMAN, STEPHEN MICHAEL GLASS, JOEY MENDOZA, JULIE DEAKIN, MICHAEL ZELASKA, DREW WOODING, and CHRIS WEBER on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br>  v.<br><br>FORD MOTOR COMPANY,<br>       Defendant. | Case No.: 0:19-cv-62646-RKA |

**FORD MOTOR COMPANY'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT UNDER RULES 12(B)1, 12(B)(2), AND 12(B)(6), AND MEMORANDUM OF LAW**

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................... 1
FACTS ALLEGED ................................................................................................................... 2
ARGUMENT ............................................................................................................................. 3
I.    The complaint should be dismissed to the extent it attempts to pursue claims on behalf of plaintiffs from states other than Florida. ........................................................ 4
    A.    Ford is not subject to general jurisdiction in Florida. .......................................... 4
    B.    The Court lacks specific jurisdiction as to the non-resident plaintiffs' claims because their contacts do not arise out of or relate to Florida. ................... 6
II.    Plaintiffs' fraud-based claims (Counts II, IV, V, VI, VIII, and X) fail. ........................... 8
    A.    Plaintiffs have not pleaded misrepresentations with particularity. ....................... 9
    B.    The claims based on allegations of omission or concealment also fail. ............... 9
    C.    Mendoza's claims for violations of the CLRA (Count IV), UCL (Count V), and FAL (Count VI) fail because Ford did not have a duty to disclose any alleged cosmetic defect that is not central to the vehicles function. .............. 13
    D.    Deakin's ICFA claim (Count VII) also fails because she cannot make a fraud claim out of a breach of contract. ............................................................. 14
III.    Plaintiffs' state-law warranty claims (Counts III, VII, IX, and XI) fail. .......................... 15
    A.    Plaintiffs have not alleged facts showing Ford breached its express warranty. ............................................................................................................ 15
    B.    The Illinois plaintiff's warranty claim (Count IX) also fails because she did not give Ford presuit notice ............................................................................ 16
IV.    The Magnuson-Moss claim (Count I) fails because the underlying state-law warranty claims fail and for lack of subject matter jurisdiction. .................................... 16
CONCLUSION ........................................................................................................................ 17

**INTRODUCTION**

Plaintiffs, whose trucks were or are all covered by an express warranty, have filed a nationwide class action involving potentially millions of vehicles over the issue pictured here:



As shown, Plaintiffs' lawsuit is about a very small "warp" defect that manifested on the dashboards of 2015-2020 model year Ford F-150 (XL/XLT) pick-up trucks shortly after their purchase or lease. This is a minor cosmetic issue that cannot be seen from within the vehicle and that, needless to say, does not affect the handling, reliability, or safety of the trucks. Yet rather than provide Ford with a reasonable opportunity to fix the problem under warranty, Plaintiffs have filed suit alleging Ford breached its express warranty and violated various state consumer protection laws. The Court should dismiss this case for a host of reasons.

First, this Court lacks personal jurisdiction as to the claims that have no connection to Florida. For example, four Plaintiffs live and purchased or leased their trucks outside the state of Florida. Also, Ford is a Delaware corporation with its principal place of business in Michigan. As such, Ford is not subject to personal jurisdiction in Florida for purposes of the non-Florida Plaintiffs. The same problem defeats Plaintiffs' attempts to bring claims on behalf of a "nationwide class"—there is no jurisdiction over claims with no connection at all to Florida.

Second, Plaintiffs' fraud claims (assuming jurisdiction existed) do not meet the pleading requirements of Rules 8 or 9(b). They do not plead affirmative representations, alleging instead that Ford knew at the time of their purchases that all F-150 XL and XLT dashboards were defective, but failed to disclose this to them. But Plaintiffs also allege that warped dashboards could be seen by customers before purchase while vehicles were on dealership lots as early as 2015, and indeed the newly added plaintiff Chris Weber concedes that he noticed the warping a single day after purchase, hardly consistent with their claim that Ford was "concealing" a defect. Plaintiffs also do not plead facts showing that Ford knew of but concealed something specific

1

from them at the time of sale. Even so, Plaintiffs offer no basis for their assumption that knowing of the potential for a slightly warped dashboard, that obviously poses no safety risk, would be the kind of material fact that must be disclosed at the time of purchase.

Third, the express warranty claims also fail because Plaintiffs have not alleged facts showing that Ford refused to honor its express warranty or that the limited-warranty remedy failed of its essential purpose. A seller does not breach a limited repair-or-replace express warranty if it fails to permanently fix a problem on the first or second attempt, which is the most that any of these Plaintiffs allege.

Fourth, because the state-law warranty claims fail, the federal Magnuson-Moss warranty claims fail along with them. For that reason, too, Plaintiffs' complaint should be dismissed.

## FACTS ALLEGED

The named plaintiffs are residents of Florida, California, Illinois, and Virginia. All of them allege they bought Ford F-150 XLT pickup trucks between March 2018 and May 2020. The Florida plaintiffs are Eric Carter, Mark Siracuse, Michael Linderman, Stephan Michael Glass, Drew Wooding, and Chris Weber. Sec. Am. Compl. ("SAC") ¶¶ 17-54, 87-107. All six live in Florida and bought their trucks in Florida. *Id*. Wooding bought his Ford F-150 in March 2018. SAC ¶ 88. Linderman bought his F-150 in May 2018. SAC ¶ 37. Siracuse bought his F-150 in November 2018. SAC ¶ 28. Glass bought his truck in late March 2019. SAC ¶ 46. Carter bought his Ford F-150 in mid-June 2019. SAC ¶ 18. Weber bought his Ford F-150 in May 2020. SAC ¶ 99.

The out-of-state Plaintiffs are Joey Mendoza (California), Julie Deakin (Illinois), and Michael Zelaska (Virginia). SAC ¶¶ 55–86. They bought their trucks in May, June, and September 2018 respectively, in their respective home states. *Id*. None of the out-of-state Plaintiffs alleges they had his or her truck serviced or repaired in Florida.

The nine Plaintiffs allege (in nearly identical terms) that before buying their trucks, they "discussed the features of the vehicle with Ford's sales representatives and reviewed the vehicle's window sticker." SAC ¶¶ 20, 30, 39, 48, 58, 68, 79, 90, 101. None provides any details as to what if any representations were made to them, about the dashboard or otherwise, or alleges reliance on any such representation. *Id*. Allegedly, after they bought or leased their trucks, Plaintiffs noticed that the dashboard was warping in one or more places. *Id*. at ¶¶ 21, 31, 40, 49, 59, 69, 80, 91, 102.

2

Additionally, all of the named Plaintiffs' trucks came with Ford's New Vehicle Limited Warranty.[1] Exs. 1, 2, and 3 to Ford's Req. for Jud. Notice ("RJN") [ECF No. 70]. Nowhere in Plaintiffs' Complaint do they allege that they gave Ford a "reasonable number of attempts" to repair the defect under Ford's New Vehicle Limited Warranty.

Given the nature of the defect, it is unsurprising that Plaintiffs allege only economic injury, claiming they overpaid for their vehicles because they were not told about the defect at the time of purchase. SAC ¶¶ 25–26, 34–35, 43–44, 53–54, 63–64, 74–75, 85–86, 96-97, 106-107. Plaintiffs allege 11 counts on behalf of themselves and various classes of current and former owners of 2015-20 Ford F-150 XL and XLT trucks. They bring one count purportedly on behalf of a "nationwide" class for violation of the Magnuson-Moss Warranty Act, and each state plaintiff or set of plaintiffs seeks to represent a state subclass alleging violation of Ford's express warranty under that state's law, as well as the state's consumer-protection statute.

## ARGUMENT

A state's assertion of personal jurisdiction over a defendant must be consistent with due process. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918–19 (2011). Even if a state's long-arm statute authorizes its courts to exercise jurisdiction to the full extent of the Constitution, a court must still ask whether exercising jurisdiction "comports with the limits imposed by federal due process." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). There are two kinds of personal jurisdiction: general and specific. General jurisdiction is "all-purpose": It allows jurisdiction even on causes of action that do not arise directly from in-state activities. *Id.*; *Goodyear,* 564 U.S. at 919. But because it is so powerful, its use is limited: Apart from truly "exceptional" cases, a corporation is subject to jurisdiction only in its state of incorporation and/or the state where it has its principal place of business. *Goodyear*, 564 U.S. at 919; *Teva Pharm. Indus. v. Ruiz*, 181 So. 3d 513, 522 (Fla. Dist. Ct. App. 2015).

Specific jurisdiction is available only if the cause of action arises out of the defendant's activity in the state, and the analysis turns on the nature of that specific "suit-related conduct."

---

[1] Ford's warranty promises that it will "repair, replace, or adjust all parts on your vehicle that malfunction or fail during normal use during the applicable coverage period due to a manufacturing defect in factory-supplied materials or factory workmanship." SAC ¶¶ 133 & n. 16. The warranty lasts for three years or 36,000 miles, whichever comes first. *Id.* at ¶ 132. The named Plaintiffs only purchased or leased 2018, 2019, or 2020 F-150s so only those warranties are implicated.

3

*Walden v. Fiore*, 571 U.S. 277, 284 (2014). That conduct must have been at least significant enough to constitute "minimum contacts" with the state; if it is, a court then considers whether it would nonetheless offend "traditional notions of fair play and substantial justice" to subject the defendant to suit under the circumstances. *See, e.g.*, *id*. at 283; *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987). The action must arise out of contacts the defendant (not the plaintiff or a third party) creates with the forum state. *Walden,* 571 U.S. at 284.

Rule 8 requires facts sufficient to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Labels and legal conclusions are not "facts" that must be taken as true. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Further, any claims that sound in fraud, including claims made under state consumer-protection statutes, must be pleaded with particularity. Fed. R. Civ. P. 9(b); *Ziemba v. Cascade*, 256 F.3d 1194, 1202 (11th Cir. 2001).

### I. The complaint should be dismissed to the extent it attempts to pursue claims on behalf of plaintiffs from states other than Florida.

The claims of the named plaintiffs from California, Illinois, and Virginia (as well as the "nationwide class" allegations) should all be dismissed because there is no basis for entertaining those claims here. On these facts, Ford is not subject to personal jurisdiction for purposes of the out-of-state plaintiffs' claims. *See Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017); *see also, e.g.*, *Leon v. Continental AG*, 301 F. Supp. 3d 1203 (S.D. Fla. 2017) (dismissing claims brought against Honda for this reason). Ford, which is incorporated in Delaware and has its principal place of business in Michigan, is not subject to general jurisdiction in Florida. Nor are the nonresident plaintiffs' claims sufficiently connected to Ford's in-state activity to support specific jurisdiction. They have no connection with that activity at all.

#### A. Ford is not subject to general jurisdiction in Florida.

A court may exercise general jurisdiction over a nonresident defendant only if the defendant's "affiliations with the forum state" are "so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Bristol-Myers*, 137 S. Ct. at 1785. In other words, the nonresident defendant's contacts with the forum must be "so wide-ranging that they take the place of physical presence in the forum as a basis for jurisdiction." *Daimler,* 571 U.S. at 132 (explaining that "a corporation's continuous activity of some sort within a state is not enough" for general jurisdiction); *Goodyear,* 564 U.S. at 920 (rejecting "stream of commerce" theory as a basis for establishing general jurisdiction). Thus, to find a corporation "at home" requires: (1)

4

that the corporation be incorporated in the forum state; (2) that it maintain its principal place of business in the forum state; or (3) that there be some exceptional circumstance that would allow a court to determine the corporation is virtually at home in the forum state.[2] *See BNSF Ry. v. Tyrrell,* 137 S. Ct. 1549, 1558–59 (2017) (reaffirming *Goodyear* and *Daimler* and explaining that "in-state business . . . does not suffice to permit the assertion of general jurisdiction over claims . . . that are unrelated to any activity occurring in [the forum state].").

In *Daimler*, for example, even though Daimler's subsidiary MBUSA maintained several facilities and a regional headquarters in California, the Supreme Court held that the California court lacked general jurisdiction because "neither Daimler nor MBUSA is incorporated in California, nor does either entity have its principal place of business there." 571 U.S. at 139. Allowing general personal jurisdiction to be exercised by a California court would have meant that general personal jurisdiction "would presumably be available in every other State in which MBUSA's sales are sizeable," a proposition which the Supreme Court rejected. *Id.*

In *BNSF*, two plaintiffs sued in Montana for personal injuries they allegedly suffered while working for BNSF in other states. 137 S. Ct. at 1553–54. Finding that BNSF had 2,000 miles of rails and over 2,000 employees in Montana, the Montana Supreme Court found general jurisdiction existed even though BNSF was a foreign corporation. *Id.* The Supreme Court reversed, holding that the constraints on general jurisdiction apply regardless of the type of claim asserted or the business enterprise sued. *Id.* at 1558-59. The Court reiterated that general jurisdiction "does not focus solely on the magnitude of the defendant's in-state contacts" but instead "calls for an appraisal of the corporation's activities in their entirety." *Id.* at 1559. As Justice Sotomayor noted, under *BNSF* "it is virtually inconceivable that such corporations will ever be subject to general jurisdiction in any location other than their principal place of business or of incorporation." *Id.* at 1560 (Sotomayor, J., concurring in part and dissenting in part).

Here, Plaintiffs cannot establish that Ford is subject to general jurisdiction in Florida. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly

---

[2] As an example of such an "exceptional" case, the Supreme Court pointed to *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952), where a Philippine company had temporarily made Ohio its principal place of business while its home country was occupied during World War II. *Daimler*, 571 U.S. at 129.

regarded as at home." *Bristol-Myers*, 137 S. Ct. at 1780 (quoting *Goodyear*, 564 U.S. at 919). Ford is incorporated in Delaware and its principal place of business is Michigan. *See* SAC ¶ 108. Nor are Ford's contacts with Florida so "exceptional" as to render it virtually at home in Florida. Again, the Court has identified only one such "exceptional" case—ever—and the facts here are not remotely similar. *See Daimler*, 571 U.S. at 129 (discussing *Perkins*). A case is not exceptional simply because a company "engages in a substantial, continuous, and systematic course of business" in the forum state. *Id.* at 139; *see also BNSF*, 137 S. Ct. at 1559 (noting that a "corporation that operates in many places can scarcely be deemed at home in all of them."). Thus, Ford is not "at home" in Florida, and not subject to general jurisdiction here. *See also, e.g.*, *Erwin v. Ford Motor Co,* No. 8:16-cv-01322-T-24AEP, 2016 WL 7655398, at *11 (M.D. Fla. Aug. 31, 2016) (holding Ford not subject to general jurisdiction); *Brown v. Ford Motor Co.*, 347 F. Supp. 3d 1347, 1350 (N.D. Ga. 2018) (holding Ford not subject to general jurisdiction in Georgia); *Ford Motor Co. v. Cejas*, No. 09-16-00280-CV, 2018 WL 1003791, at *10 (Tex. App. Feb. 22, 2018) (holding Ford not subject to general jurisdiction in Texas); *Sullivan v. Ford Motor Co.*, No. 16-cv-03505-JST, 2016 WL 6520174, at *7–8 (N.D. Cal. Nov. 3, 2016) (holding mere fact that Ford makes and sells vehicles in a national market is insufficient to trigger the "exceptional case" caveat); *Cahen v. Toyota Motor Corp.*, 147 F. Supp. 3d 955, 965 (N.D. Cal. 2015) (holding Toyota not subject to general jurisdiction in California).

> **B. The Court lacks specific jurisdiction as to the non-resident plaintiffs' claims because their contacts do not arise out of or relate to Florida.**

For a court to exercise specific personal jurisdiction, "'the suit' must 'aris[e] out of or relat[e] to the defendant's contacts with the forum.'" *Bristol-Myers*, 137 S. Ct. at 1780 (2017) (quoting *Daimler*, 134 S. Ct. at 754). Specific jurisdiction thus requires a "connection between the forum and the specific claims at issue." *Bristol-Myers*, 137 S. Ct. at 1781. Here, there is no connection between Ford's conduct in Florida and the non-Florida Plaintiffs' claims. Instead, Plaintiffs appear to contend that the Court may exercise personal jurisdiction over the non-Florida plaintiffs' claims because Florida plaintiffs allege similar claims. But "the mere fact that other plaintiffs" residing in the forum have alleged claims similar to those of nonresident plaintiffs "does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Id*. In *Bristol-Myers*, the Supreme Court held a California court could not exercise specific jurisdiction over the claims of non-California plaintiffs who did not buy or use the product in

6

California and alleged no injury there, and it made no difference that they joined with California plaintiffs. *See id*. Here, the non-Florida plaintiffs do not allege any nexus whatsoever between their claims and any actions by Ford (or anyone else) in Florida. SAC ¶¶ 55–56, 65–66, 76–77. They live in other states, bought their trucks in those states, had them serviced in other states, and if they suffered any harm, suffered it in those states. They therefore cannot show that Ford is subject to specific jurisdiction in Florida for purposes of those claims. *See Erwin v. Ford Motor Co.*, Case No. 8:16-cv-1322, 2016 WL 7655398, at *7 (M.D. Fla. Aug. 31, 2016) (finding Ford's shipment of other vehicles to Florida and its advertising there did not establish jurisdiction over the plaintiff's claims because the claims did not arise out of or relate to those contacts).

Plaintiffs will likely argue *Bristol-Myers* does not apply here because it was a "mass action." The Eleventh Circuit has not expressly ruled on whether *Bristol-Myers* applies to *class* actions as well. While Florida district courts have split on the issue, better-reasoned decisions hold that *Bristol-Myers* does apply. *Compare, e.g.*, *In re Takata Airbag Prods. Liab. Litig.*, 396 F. Supp. 3d 1101, 1134–37 (S.D. Fla. 2019) (holding *Bristol-Myers* did not "per se" apply to class actions, but holding jurisdiction was lacking in any event), *with Howe v. Samsung Electronics Am., Inc.*, No. 1:16-cv-386-RH/GRJ, 2018 WL 2212982, at *2–4 (N.D. Fla. Jan. 5, 2018) (holding *Bristol-Myers* did apply to class actions). As the *Howe* court pointed out, the distinction between class and mass actions *cannot* make a difference, because that is a mere procedural distinction, whereas *Bristol-Myers* was based on due process. 2018 WL 2212982, at *5; *see Hanson v. Denckla*, 357 U.S. 235, 251 (1958) (limits on personal jurisdiction are "a

consequence of territorial limitations on the power of the respective States").[3] Therefore, because the Court also lacks specific jurisdiction, the non-Florida plaintiffs' claims should be dismissed.

### II. Plaintiffs' fraud-based claims (Counts II, IV, V, VI, VIII, and X) fail.

Plaintiffs allege fraud under four states' consumer-protection statutes, specifically Florida's FDUTPA; California's CLRA, UCL, and FAL; Illinois' ICFA, and Virginia's VCPA. *See, e.g.*, SAC ¶¶ 168-177, 191-225, 236-244, 255-267. All claims sounding in fraud, including those asserted under consumer-protection statutes, must be pleaded with particularity.[4] Rule 9(b) requires a plaintiff to allege "(1) precisely what statements were made in what documents or oral representations or what omissions were made, (2) the time and place of each such statement and the person responsible for making (or in the case of omissions, not making) same, (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants 'obtained as a consequence of the fraud.'" *Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1342 (S.D. Fla. 2013). In other words, Plaintiffs must "plead the who, what, when, where,

---

[3] *See also Kommer v. Ford Motor Co.*, No. 17-CV-296, 2019 WL 2895384 (N.D.N.Y. June 19, 2019) (denying leave to amend to add non-resident named plaintiffs in putative class action for lack of general, specific, or pendent personal jurisdiction over non-residents' claims where Ford was not "at home" in New York and "[t]he claims Plaintiff seeks to add are clearly unrelated in any way to Ford's activity within New York") ("Even the considerations of judicial economy, convenience, and fairness to litigants underlying pendent jurisdiction cannot overcome a constitutional limit on judicial authority.") (internal quotation marks and citation omitted); *Story v. Heartland Payment Sys., LLC*, No. 3:19-CV-724, 2020 WL 2559755 (M.D. Fla. May 20, 2020) (holding court lacked general, specific, or pendent personal jurisdiction over non-resident named plaintiffs' claims and rejecting "argument that the Court should allow [the non-resident plaintiffs] to piggy-back onto the specific personal jurisdiction demonstrated by…the two Florida plaintiffs[] through the doctrine of pendent personal jurisdiction") (footnote omitted); *id.* at *10 ("Even in a class action, … <u>the named representatives must be able to demonstrate either general or specific personal jurisdiction</u>…. Imposing personal jurisdiction on defendant for all of the claims of non-resident plaintiffs, just because specific jurisdiction may lie as to the resident plaintiff's claims, would run afoul of the traditional notions of fair play and substantial justice that form the bedrock of any court's personal jurisdiction analysis.") (internal quotation marks, citations, and brackets omitted) (emphasis original).

[4] *See Leon*, 301 F. Supp. 3d at 1226 (holding Rule 9(b) applied because plaintiffs' FDUTPA claim sounded in fraud); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) (same for claims under California UCL that sounded in fraud); *Fisher v. Monster Beverage Corp.*, 125 F. Supp. 3d 1007, 1033 (C.D. Cal. 2013) (same for UCL, FAL, and CLRA fraud claims); *Camasta*, 761 F.3d at 739 (same for ICFA); *Nahigian v. Juno Loudoun, LLC*, 684 F. Supp. 2d 731, 741 (E.D. Va. 2010) (same for VCPA).

8

and how." *Id.* (citing *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008)). Whether based on affirmative misrepresentations or omissions, these claims fail.

### A. Plaintiffs have not pleaded misrepresentations with particularity.

To the extent Plaintiffs' statutory fraud claims are based in whole or in part on alleged misrepresentations, those claims fail because Plaintiffs do not identify any misrepresentations. In fact, Plaintiffs cite only one document intended for consumers: the window sticker or "Monroney label." SAC ¶¶ 20, 30, 29, 48, 58, 68, 79, 90, 101. But they do not allege it included any false or misleading statements. Plaintiffs allege generally that they "discussed the features of the vehicle with the Ford sales representative" and "reviewed the vehicle's window sticker," but their allegations are far too vague and conclusory to comply with Rule 9(b). *See, e.g.,* SAC ¶¶ 212, 220, 242, 261; *see Aprigliano,* 979 F. Supp. 2d at 1342; *see also Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (affirming dismissal of fraud claims when complaint "contain[ed] not a word of the [allegedly fraudulent] notices' specific contents").

The Illinois plaintiff's claims should be dismissed in their entirety because IFCA claims must be based on some sort of affirmative misrepresentation. "A consumer cannot maintain an action under the [ICFA] when the plaintiff does not receive, directly or indirectly, communication or advertising from the defendant."). *De Bouse v. Bayer*, 922 N.E.2d 309, 316 (Ill. 2009). Like the other plaintiffs, Ms. Deakin did not allege the details of any communication she received from the defendant, and so her ICFA claim fails.

### B. The claims based on allegations of omission or concealment also fail.

The other plaintiffs' attempts to rely on concealment and omission are flawed for other reasons. Plaintiffs fail to specify any facts that if true would constitute active concealment (and the facts alleged actually show the contrary) and their omission claims do little more than note the Monroney window sticker failed to disclose the alleged defect.

Rule 9(b) applies to omission or concealment claims as well as those based on affirmative misrepresentations. *See, e.g., Padilla v. Porsche Cars N. Am., Inc.*, 391 F. Supp. 3d 1108, 1113–14 (S.D. Fla. 2019); *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1371 (11th Cir. 1997) (per curiam). Such claims require a plaintiff to allege, among other things, that the undisclosed fact was material, that the defendant had a duty to disclose it, and that the plaintiff reasonably relied on the misinformation. *Aprigliano*, 979 F. Supp. 2d at 1342; *see also Crawford's Auto*

9

*Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1159 (11th Cir. 2019) (holding duty to disclose must be alleged). Further, a plaintiff must allege facts showing that the defendant knew the allegedly withheld fact at or before the time of the transaction. *See Williams v. Yamaha Motor Corp., U.S.A.*, 106 F. Supp. 3d 1101, 1112 & n.14 (C.D. Cal. 2015) (concluding that "presale knowledge of a product defect is also a required element of claims brought under" FDUTPA), *aff'd*, 851 F.3d 1015 (9th Cir. 2017); *Aprigliano*, 979 F. Supp. 2d at 1343 (dismissing fraudulent concealment claim under Florida law because the plaintiffs "fail to plead facts sufficient to establish [the defendant's] knowledge and concealment of the defect"); *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1370 (N.D. Ga. 2013) (dismissing fraud claim under Florida law because the plaintiff "purchased his vehicle in April 2004" but "failed to plausibly allege that Defendants knew of the defect earlier than 2008"); *Matthews v. Am. Honda Motor Co.*, No. 12-60630-CIV, 2012 WL 2520675, at *3 (S.D. Fla. June 6, 2012) (recognizing that "a FDUTPA claim is stated where the defendant knowingly fails to disclose a material defect that diminishes a product's value.") (citation omitted). This rule makes sense because a defendant cannot be faulted for failing to disclose information it did not know.

First, it is not clear precisely what Plaintiffs allege should have been disclosed to them, or how, nor do they allege when Ford had the required knowledge. As discussed above, Plaintiffs do not specify what they believe the "defect" actually is, making only vague allegations that other, "premium" dashboards do not have it. SAC ¶ 116. As a result, they have necessarily failed to allege facts showing Ford knew about this particular defect, much less that it knew at the time of Plaintiffs' purchases, all of whom except Chris Weber purchased in 2018 and 2019. In fact, the mid-2018 Special Service Message that Plaintiffs cite shows that Ford was still investigating the problem at that time, certainly not (as they suggest) that it had decided to conceal it. *Id*. at ¶¶ 4, 81.

Second, if Plaintiffs' argument is that Ford should have disclosed to them that there was a possibility that some dashboards might warp—the symptom of the defect, not the defect itself—then they have another problem, because they themselves allege that warped F-150 dashboards could be seen in unsold vehicles on dealership lots for years before Plaintiffs made their purchases:

- July 22, 2015, a consumer stated: ***"I checked this out today at a dealer. All of the XLTs had it..."***;

10

- August 17, 2015, a consumer stated: *"…I walked the dealers lot and all the F150s are doing the same thing as mine…"*;
- August 22, 2017, a consumer stated *"I went this past weekend to look at some 2017s I could not find 1 truck that had a good clean dash that was not warping/separating around the upper vents…"*;
- September 22, 2017, a consumer stated: *"…I looked at 18 F150 17/18 models on the lot and 14 have the problem.")*

*Id.* at ¶¶ 121,132, 138 (emphasis added). Indeed, the newly added Plaintiff Chris Weber concedes that he noticed the warping the very next day after he purchased his vehicle, *id.* at ¶¶ 99, 102, a forceful indication that the warping had manifested prior to his purchase and thus that he purchased with notice.

Plaintiffs also rely almost entirely on this handful of complaints in alleging that Ford has known all about "the Defect" since at least April 2015. *Id.* at ¶¶ 121,132, 138. They also allege that a simple internet search revealed reports of warped F-150 dashboards (*e.g.*, *id.* at ¶¶ 137–38). But if these allegations are true, this too shows that the allegedly withheld information was actually public knowledge, meaning Plaintiffs cannot plausibly claim that Ford "concealed" it. *See, e.g., Padilla*, 391 F. Supp. 3d at 1114-15 (noting that concealment claim failed partly because of plaintiff's own allegations showing Porsche made disclosures to NHTSA: "These public disclosures are the opposite of fraudulent concealment."); *see also Herron v. Best Buy Co., Inc.*, 924 F. Supp. 2d 1161, 1175 (E.D. Cal. 2013) (holding information about deficiencies in laptop's battery life not within defendant's exclusive knowledge because retailer's website and a *Newsweek* article disclosed the information); *Gray v. Toyota Motor Sales, U.S.A.*, No. CV 08-1690 PSG (JCx), 2012 WL 313703, at *8 (C.D. Cal. Jan. 23, 2012) (holding plaintiffs could not show Toyota had exclusive knowledge of "real-world fuel efficiency" where information about discrepancy was public before the purchase). Ford did not have a duty to disclose information that was already public.

Third, the Florida, California and Illinois Plaintiffs also have not pleaded facts showing Ford's alleged omission was likely to deceive a reasonable purchaser. FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). The elements comprising a consumer claim for damages under FDUTPA are: (1) a deceptive act or unfair

11

practice; (2) causation; and (3) actual damages. *Carriuolo v. General Motors Co.*, 823 F.3d 977, 983 (11th Cir. 2016). To satisfy the first element, the plaintiff must show that "the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances." *Id*. at 984. Florida applies an objective test to determine whether the practice was likely to deceive. *Id*. Like FDUTPA, likelihood of deception is a required element of the UCL, FAL, CLRA, and IFCA. *Williams v. Gerber Prod. Co.*, 552 F.3d 934 (9th Cir. 2008) (UCL, FAL, and CLRA); *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (IFCA)). Here, the Florida, California, and Illinois plaintiffs fail to identify any affirmative statement by Ford, let alone one that would likely deceive a reasonable purchaser. They also fail to allege facts that would show how Ford's failure to disclose a minor cosmetic issue in the dashboard that (according to Plaintiffs) may have been visible at the time of sale, and that has no impact on vehicle performance or safety, was likely to deceive a customer into buying a truck or paying a premium. Here, Plaintiffs plead nothing except the conclusory statement that if "the Defect" had been disclosed, they would not have bought their trucks—or if they did buy them, they would have paid less. SAC ¶¶ 26, 35, 44, 54, 64, 75, 86, 97, 107. That is not sufficient to state a claim.

Fourth, in order for the Virginia plaintiff, Mr. Zelaska, to sustain a claim under the VCPA, he must prove Ford acted with an intent to deceive or otherwise mislead as to a material fact on which the plaintiff relied to his detriment and which resulted in measurable damages. *Padin v. Oyster Point Dodge*, 397 F. Supp. 2d 712, 722 (E.D. Va. 2005). Indeed, he is required to plead the claim with particularity under Rule 9(b). *See* Fed. R. Civ. P. 9(b); *Nahigian v. Juno Loudoun, LLC*, 684 F. Supp. 2d 731, 741 (E.D. Va. 2010) (holding that Rule 9(b) applies to the VCPA). Here, Zelaska pleads only that "Plaintiff and the other Virginia Class members relied on the omissions of Ford with respect to the characteristics of the Class vehicles, including that they did not suffer from the Defect." SAC ¶ 263. Again, this is not sufficient to state a claim.

Lastly, Plaintiffs fail to allege any facts that would establish Ford "actively concealed" the alleged defect. To the contrary, they themselves allege that the dashboard warp was present and visible in some vehicles on dealer lots. *Id*. at ¶¶ 121, 132, 138. For that reason, too, Plaintiffs' concealment or omission claims should be dismissed.

### C. Mendoza's claims also fail because, under California law, there is no duty to disclose a cosmetic defect that does not affect a product's "central function."

Mendoza's omission claims under the CLRA, FAL, and UCL also fail because California law does not impose a duty to disclose a trivial defect that poses no safety risk and does not affect a product's "central function."

Under California law, to be actionable an omission "must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434, 458 (N.D. Cal. 2018), *on reconsideration in part*, 386 F. Supp. 3d 1155 (N.D. Cal. 2019) (citing *Daugherty v. Am. Honda Motor Co.,* 144 Cal. App. 4th 824, 835 (2006); *Wilson v. Hewlett-Packard Co.,* 668 F.3d 1136, 1141 (9th Cir. 2012). "California courts have been careful to 'cabin[] the scope of the duty to disclose to avoid the unsavory result that manufacturers are on the hook for every product defect that occurs at any time, regardless of any time limits contained in their warranties."' *In re Apple Inc. Device Performance Litig.*, 2018 WL 4772311, at *19 (citing *In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 928 (N.D. Cal. 2018)) (alterations in original). Absent a material misrepresentation, a manufacturer's duty to consumers is limited to its warranty obligations or a "safety issue"—a design defect causing an unreasonable safety hazard. *Wilson*, 668 F.3d at 1141; *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1025-26 (9th Cir. 2017).

Recently, in fact, the Ninth Circuit held that California law does not require a manufacturer to disclose an alleged defect that does not affect the "central functionality" of a product. *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 863–64 (9th Cir. 2018). In *Hodsdon*, the plaintiff argued that *Wilson* was inconsistent with certain California state appellate decisions. *See id*. at 861–65 (discussing, among other cases, *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249 (2011) and *Rutledge v. Hewlett-Packard Co.*, 238 Cal. App. 4th 1164 (2015)). The court held, however, that the plaintiff's argument omitted a "crucial element" those cases had emphasized—that "the defect must relate to the central functionality of the product." *Id*. at 863. There might be an exception for cases alleging a defect that did not affect "central function" but posed an unreasonable safety hazard, the court explained. *Id*. at 864–65. But on the facts before it, the plaintiff had done neither, and so the omission claim failed. *Id*. at 865.

The same is true here. Mendoza describes a cosmetic defect (the "warping" and "creaking" of the dashboard) of his 2018 F-150. SAC ¶ 59. He does not allege this affects the

13

"central function" of the truck or that it poses a safety risk of any kind. By contrast, in *Collins* and *Rutledge*, the physical defects were a defective chip and inverter that actually rendered the products physically incapable of use, breaking either the hard drive or the laptop screen, during the warranty period. Here, Mendoza and the other plaintiffs are complaining about a mere cosmetic issue. Under California law, at least, even if a manufacturer knows there is a possibility that such an issue may manifest, that is not something it has a duty to disclose.

> **D.   Deakin's ICFA claim (Count VII) also fails because she cannot make a fraud claim out of a breach of contract.**

Deakin's claim under the ICFA should be dismissed because it is little more than a restatement of her warranty claim with a different title. To state an ICFA claim, a plaintiff must allege: "(1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) the occurrence of the deception in the course of conduct involving trade or commerce; and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 850 (2005). However, if an ICFA claim is (as here) based on allegations that a party breached its obligations under a contract or warranty, the claim fails as a matter of law. *Id.* at 844 ("A breach of contractual promise, without more, is not actionable...."); *see also Greenberger v. GEICO General Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011). In *Avery*, the plaintiff asserted a claim against State Farm for using allegedly inferior replacement parts in violation of the insurance policies. This same allegation was the basis for the breach-of-contract claim. State Farm lost at trial, but the Illinois Supreme Court reversed:

> What plaintiff calls 'consumer fraud' or 'deception' is simply defendants' failure to fulfill their obligations. Were our courts to accept plaintiff's assertion that promises that go unfulfilled are actionable under the Consumer Fraud Act, consumer plaintiffs could convert any suit for breach of contract into a consumer fraud action. However, it is settled that the Consumer Fraud Act was not intended to apply to every contract dispute or to supplement every breach of contract claim with a redundant remedy.

835 N.E.2d at 844 (quoting *Zankle v. Queen Anne Landscaping* 724 N.E.2d 988, 992 (2000)). Here, Deakin claims she was sold an F-150 with a defective dashboard that Ford has not fixed under its warranty. Express warranty claims are contract-based, and cannot be pursued under the ICFA. *See Lambert v. Dollar General Corp.*, Case No. 16 C 11319, 2017 WL 2619142 at *6

14

(N.D. Ill. June 16, 2017) (holding ICFA claim was merely the "breach of express warranty claim clothed in different garb," and dismissing it).

To circumvent *Avery*, Deakin may assert that her ICFA claim is based not on Ford's failure to fix the truck, but rather its alleged omission or concealment of the dashboard defect. Such arguments have been repeatedly rejected. *See, e.g., Greenberger*, 631 F.3d at 395 ("Greenberger insists that his consumer-fraud claim is based on more than a simple breach of contract because it alleges both a 'false promise' and a material 'omission'.... These allegations, however, are nothing more than restatements of the claimed breach of contract"); *Langendorf v. Conseco Senior Health Ins. Co.*, 590 F. Supp. 2d 1020, 1023 (N.D. Ill. 2008) (similar holding). Here, too, Deakin claims she bought a truck with a defective dashboard and Ford has not fixed it. That is a warranty claim, and Deakin's duplicative ICFA claim should be dismissed.

### III.   Plaintiffs' state-law warranty claims (Counts III, VII, IX, and XI) fail.

#### A.   Plaintiffs have not alleged facts showing Ford breached its express warranty.

A manufacturer does not breach a limited repair-and-replace warranty simply because it fails to successfully and permanently repair a problem on the first attempt. *PB Prop. Mgt., Inc. v. Goodman Mfg. Co., L.P.*, 3:12-cv-1366, 2013 WL 12172912, at *3 (M.D. Fla. Aug. 23, 2013). That is, the remedy the limited warranty affords is not monetary damages, but repair and/or replacement. That limitation is enforceable unless the remedy "fails of its essential purpose," which may happen if the warrantor "does not successfully repair defects within a reasonable time or within a *reasonable number of attempts*." *Richter v. Monaco Coach Corp.*, No. 5:08-cv-207-WTH-DAB, 2009 WL 1537894, at *4 (M.D. Fla. June 2, 2009) (applying Florida law) (emphasis added); *see also Sumer v. Carrier Corp.*, No. 14-CV-04271-VC, 2015 WL 758314, at *1 (N.D. Cal. Feb. 20, 2015) ("[U]nder California law, a repair or replace remedy fails of its essential purpose only if repeated repair attempts are unsuccessful within a reasonable time."); *Pearson v. DaimlerChrysler Corp.*, 813 N.E.2d 230, 237 (2004), *as modified on denial of reh'g* (July 22, 2004) (same under Illinois law). Here, most of the plaintiffs do not allege they gave Ford an opportunity to repair or replace their dashboards. SAC ¶¶ 22-24, 32-33, 60-62, 70-73, 81-84, 103-05. As a matter of law, Ford could not have breached an express warranty extended to a consumer who never gave Ford a reasonable number of attempts to fix the defect. Also, none of the Plaintiffs' allegations shows that Ford would not or could not reasonably repair the defect

15

within a reasonable number of attempts. For that reason alone, they have not alleged that Ford breached its express warranty.

**B.    The Illinois plaintiff's warranty claim (Count IX) also fails because she did not give Ford presuit notice.**

Illinois requires presuit notice for express warranty claims. *See Reyes v. McDonald's Corp.*, Nos. 06 C 1604, 06 C 2813, 2006 WL 3253579, at *3 (N.D. Ill. Nov. 8, 2006) ("The notice requirement of § 2-607 'is satisfied only where the manufacturer is somehow apprised of the trouble with the particular product purchased by a particular buyer.'") (quoting *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 590 (Ill. 1996)). Here, although Deakin alleges that she contacted a dealer about the warping of her dashboard, she has not alleged any direct presuit contact with Ford. SAC ¶¶ 70–71. Deakin may argue that the complaint sufficiently alleges presuit notice because it alleges that Ford knew the product was defective, but that argument would fail. Under Illinois law, "[t]he notice 'of the breach' required is not of the facts, which the seller presumably knows quite as well as, if not better than, the buyer, but of buyer's claim that they constitute a breach." *Connick*, 675 N.E.2d at 590 (citation omitted). Thus, Deakin's breach of express warranty claim would fail for this reason as well.

**IV.    Plaintiffs' claim for violation of Magnuson-Moss Warranty Act (Count I) falls with their express warranty claims.**

Plaintiffs' MMWA claim depends on their assertion that Ford breached an express warranty. "[T]he Magnuson-Moss Warranty Act creates a federal private cause of action for a warrantor's failure to comply with the terms of a written warranty[.]" *Milicevic v. Fletcher Jones Imports, Ltd.*, 402 F.3d 912, 917 (9th Cir. 2005). But "the question whether a warrantor has committed a breach of a limited express warranty under the Act is governed by state law." *Ocana v. Ford Motor Co.,* 992 So. 2d 319, 324 (Fla. 3d DCA 2008) (citations omitted); *see also David v. Am. Suzuki Motor Corp.*, 629 F. Supp. 2d 1309, 1323–24 (S.D. Fla. 2009) (same); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (same). "Because Plaintiff['s] breach of express warranty claim under Florida's UCC fails, [his] breach of express warranty claim under the MMWA necessarily fails also." *Burns v. Winnebago Indus., Inc.*, No. 8:11-cv-354-T-24-TBM, 2012 WL 171088, at *4 (M.D. Fla. Jan. 20, 2012) (citations omitted), *aff'd,* 492 F. App'x 44 (11th Cir. 2012) (per curiam). For that reason, Plaintiffs' nationwide MMWA allegations should be dismissed.

16

In addition to that substantive defect, Plaintiffs' MMWA claim also fails because they failed to exhaust the informal dispute resolution mechanism provided by the Limited Warranty.

Title 15 U.S.C. § 2310(a)(3) provides as follows:

> One or more warrantors may establish an informal dispute settlement procedure which meets the requirements of the Commission's rules under paragraph (2). If—
> (A) a warrantor establishes such a procedure,
> (B) such procedure, and its implementation, meets the requirements of such rules, and
> (C) he incorporates in a written warranty a requirement that the consumer resort to such procedure before pursuing any legal remedy under this section respecting such warranty,
> then (i) the consumer may not commence a civil action (other than a class action) under subsection (d) of this section unless he initially resorts to such procedure; and (ii) a class of consumers may not proceed in a class action under subsection (d) except to the extent the court determines necessary to establish the representative capacity of the named plaintiffs, unless the named plaintiffs (upon notifying the defendant that they are named plaintiffs in a class action with respect to a warranty obligation) initially resort to such procedure. In the case of such a class action which is brought in a district court of the United States, the representative capacity of the named plaintiffs shall be established in the application of rule 23 of the Federal Rules of Civil Procedure. In any civil action arising out of a warranty obligation and relating to a matter considered in such a procedure, any decision in such procedure shall be admissible in evidence.

Here, Ford's Limited Warranty states: "You are required to submit your warranty dispute to the BBB AUTO LINE before exercising rights or seeking remedies under the Federal Magnuson-Moss Warranty Act." Ex. 1 at 7, Ex. 2 at 7, and Ex. 3 at 7 to RJN. Plaintiffs do not allege that they did so. Consequently, their MMWA claim must be dismissed for this separate and independent reason. dismissal of the MMWA. *See, e.g.*, *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 989 (N.D. Cal. 2014)

## CONCLUSION

Ford respectfully requests that the Court dismiss all of Plaintiffs' claims.

Dated: August 17, 2020   */s/ William P. Geraghty*
William P. Geraghty
Florida Bar No. 89508
E-mail: wgeraghty@shb.com
Katherine G. Mastrucci
Florida Bar No. 105367
E-Mail: kmastrucci@shb.com

SHOOK, HARDY & BACON L.L.P.
201 Biscayne Boulevard
Miami, Florida 33131
Phone: (305) 358-5171

Michael L. Mallow (admitted pro hac vice)
E-mail: mmallow@shb.com
Mark D. Campbell (admitted pro hac vice)
E-mail: mdcampbell@shb.com
Jesus J. Torres (admitted pro hac vice)
E-mail: jjtorres@shb.com
SHOOK, HARDY & BACON L.L.P.
2049 Century Park East, Suite 3000
Los Angeles, California 90067
Phone: (424) 285-8330

Jessica M. Kennedy
Florida Bar No. 96015
E-mail: jkennedy@mtwlegal.com
McDonald Toole Wiggins, PA
111 N. Magnolia Ave., Suite 1200
Orlando, FL 32801
Phone: (407) 246-1800

*Attorneys for Defendant Ford Motor Company*